IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

STATE AUTO PROPERTY        )
CASUALTY INSURANCE COMPANY, )
                                      )
          Plaintiff,        )
                                        )
vs.                                 )     Case No. 15-CV-956-NJR-RJD
                                        )
BRUMIT SERVICES, INC.,       )
CARL E. BRUMIT, JR.,         )
DELORES M. MENARD, and      )
ALLEN W. MENARD,         )
                                        )
        Defendants.     )

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

      This insurance coverage dispute stems from an accident that occurred when Carl Brumit was backing his truck out of a parking space at a gas station and he hit Delores Menard as she walked through the parking lot. At the time of the accident, Brumit was insured through a business auto liability policy issued by State Auto Property and Casualty Insurance Company ("State Auto"). Twenty-one months later, Mrs. Menard and her husband Allen filed suit against Brumit for injuries she allegedly sustained as a result of the accident. State Auto then filed this lawsuit seeking a declaration that it has no duty to defend Brumit or his business, Brumit Services Inc., in the underlying lawsuit filed by the Menards because Brumit failed to promptly notify the company about the accident as required by the insurance policy (Doc. 1). State Auto also seeks

reimbursement of the costs it has incurred in defending Brumit and Brumit Services (Doc. 1). Brumit and Brumit Services then filed a counterclaim against State Auto basically seeking a declaration that the notice to State Auto was timely, and therefore State Auto does, in fact, have a duty to defend them in the underlying lawsuit (Doc. 29).

This matter is currently before the Court on the cross-motions for summary judgment filed by Plaintiff State Auto Insurance, Defendants Delores and Allen Menard, and Defendants Carl Brumit and Brumit Services, Inc. (Docs. 66, 68, 70).[1] The only issue presented by the cross-motions is whether Carl Brumit breached the notice provision of his insurance policy. The Court has carefully reviewed the briefs and exhibits submitted by the parties. For the reasons explained below, the motion for summary judgment filed by State Auto is denied, and the motions filed by Carl Brumit and Brumit Services[2] and the Menards are granted.

## BACKGROUND

*The Policy*

This case concerns the business auto liability insurance policy issued by State Auto to Carl Brumit doing business as Brumit Services, Inc. (Doc. 1-1). The policy was

---

[1] The Menards' motion for summary judgment and supporting memorandum are at Docs. 66, 67. State Auto's response is at Doc. 76, and Brumit's response is at Doc. 77. The Menards did not file a reply.

Brumit's motion for summary judgment and supporting memorandum are at Docs. 68, 69. State Auto's response is at Doc. 78. The Menards did not file a response. Brumit's reply brief is at Doc. 86.

State Auto's motion for summary judgment and supporting memorandum are at Docs. 70, 70-1. The Menards' responses are at Docs. 84, 95, and Brumit's response is at Doc. 81. State Auto's reply is at Doc. 96.

[2] For the sake of ease, Carl Brumit and his business, Brumit Services Inc., will be treated as one throughout this order and collectively referred to as "Brumit."

effective for the period of June 1, 2013 to June 1, 2014 (Doc. 1-1).

The coverage section of the policy provides, in pertinent part:

**SECTION II—LIABILITY COVERAGE**
(A)  **Coverage**
We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
. . .

We have the right and duty to defend any "insured" against a "suit" asking for such damages . . . . However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" . . . to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate.

(Doc. 1-2, p. 2).

The portion of the policy referred to as the "notice provision" provides:

**SECTION IV—BUSINESS AUTO CONDITIONS**
The following conditions apply in addition to the Common Policy Conditions:

(A)  **Loss Conditions**
  **. . .**
  (2)  **Duties in the Event of Accident, Claim, Suit Or Loss**
    We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
    (a) In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:
      (1) how, when and where the "accident" or "loss" occurred.
      (2) the "insured's" name and address; and
      (3) to the extent possible, the names and addresses of any injured persons and witnesses

(Doc. 1-2, p. 7).

The policy does not define "prompt" (*see* Docs. 1-2, 1-3, 1-4, 1-5). The policy also

does not define "accident," but indicates that an accident "includes continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage'" (Doc. 1-2, p. 8).

*The Accident & Underlying Lawsuit*

On September 6, 2013, Delores Menard parked her vehicle at a Phillips 66 gas station located in Columbia, Illinois (Doc. 70-3). She got out of her vehicle and began walking across the parking lot to the gas station's convenience store (*Id.*). Carl Brumit was backing his truck out of a parking space and, according to Mrs. Menard, the tailgate of his truck "tapped" her left shoulder (*Id.*). Mrs. Menard fell to the ground and scraped her right elbow and right knee on the parking lot (*Id.*). She testified that it was a "low-velocity" impact, but she suffered a "hard fall" (Doc. 70-3).

Brumit did not even realize what had happened, and he began to exit the parking lot (Doc. 70-2; Doc. 70-3). Another driver in a passing car alerted him, however, that "a lady was on the ground," and he circled back around and parked his truck (Doc. 70-2). Mrs. Menard indicated that she did not need an ambulance and was not hurt, but Brumit nevertheless called 911 and asked the dispatcher to send an ambulance (Docs. 70-2, 70-3). The paramedics arrived and bandaged Mrs. Menard's elbow, checked her knee, and gave her an ice pack (Doc. 70-3). Mrs. Menard declined to have the paramedics transport her to a hospital because she did not think she was seriously hurt (*Id.*).

Columbia Assistant Police Chief, Jerry Paul, was at the convenience store at the time of the accident (Doc. 70-5). He viewed the footage from the gas station's security cameras and spoke with both Carl Brumit and Delores Menard (*Id.*). He did not

complete a police report at the scene (*see Id.*). Instead, Officer Paul advised Mrs. Menard that she could obtain a copy of the police report in a couple days at the Columbia police station (*Id.*; Doc. 70-3). Officer Paul does not recall if he relayed that same information to Brumit (Doc. 70-5). According to Brumit, Officer Paul never told him that he could obtain a copy of the report, let alone that a report would be completed (Doc. 70-2).

Officer Paul did not issue a traffic citation to Brumit, and Brumit was permitted to leave the gas station (Docs. 70-2, 70-5). Delores Menard also was permitted to leave the gas station, and she walked herself to her car and drove away (Doc. 70-3; *see* Doc. 70-5). Brumit did not report the accident to State Auto because he "was under the impression that [Mrs. Menard] was not injured," much less "injured in a way that she would have to file a claim or pursue a lawsuit" (Doc. 70-2). Brumit did not have any further contact with Mrs. Menard, the Columbia Police Department, or anyone else about the accident (*see* Docs. 70-2, 70-3, 70-5).

Although Delores Menard did not believe her injuries were serious at the time of the accident, she testified that a "couple days later" she developed impact trauma to her low and mid back as a result of the impact with Carl Brumit's truck and her fall (Doc. 70-3). Eventually, her back injuries required surgery in April 2015. On June 18, 2015, Mrs. Menard filed a lawsuit against Carl Brumit and Brumit Services in the Circuit Court of St. Clair County, Illinois (Doc. 2). Brumit was served with summons and a copy of the complaint on June 23, 2015. (Doc. 70-7). Around that same time, he received a lien letter and a copy of the police report from Mrs. Menard's attorney (*Id.*). On June 24th, Brumit contacted his insurance agent and turned all of the papers over to him, who in

turn sent all of the papers to the State Auto claims department on June 25th (*Id.*).

Within three days of receiving the papers, State Auto decided to provide a defense to Brumit and Brumit Services in the lawsuit under a full reservation of rights (Doc. 29-4; Docs. 72, 73, 78-1). On August 27, 2015, State Auto filed this lawsuit seeking a declaration that it has no duty to defend Brumit and Brumit Services and that it is entitled to reimbursement of the money it has already spent on the defense of the underlying lawsuit (Doc. 1).

<u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (*quoting* FED. R. CIV. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party, who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 332-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue exists "when 'the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.'" *Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 681 (7th Cir. 2014) (citations omitted).

This same standard applies when the parties file cross motions for summary judgment. *See Advance Cable Co., LLC v. Cincinnati Ins. Co.*, 788 F.3d 743, 746 (7th Cir. 2015). The court "take[s] the motions one at a time and then, as usual, construe[s] all facts and draw[s] all reasonable inferences in favor of the non-moving party." *Id.* The court can only grant summary judgment for one of the sides if the evidence as a whole — from both motions — establishes that no material facts are in dispute and the movant is entitled to judgment as a matter of law. *Id.*; *Bloodworth v. Vill. of Greendale*, 475 Fed.Appx. 92, 95 (7th Cir. 2012); *Davis v. Time Warner Cable of Se. Wisconsin, L.P.*, 651 F.3d 664, 671 (7th Cir. 2011).

## DISCUSSION

It is undisputed that Carl Brumit did not give State Auto notice of his accident with Delores Menard until approximately twenty-one months after its occurrence. State Auto argues the twenty-one month delay means Brumit breached the notice provision of his insurance policy, which required "prompt" notice of an accident (Doc. 70-1). Based on that breach, State Auto contends that there is no coverage under the policy for the accident, and it is entitled to summary judgment on its claim that it has no duty to defend or indemnify Brumit in the Menards' underlying lawsuit (Doc. 70-1). Conversely, the Menards and Brumit argue that the twenty-one month delay in notice was reasonable because Brumit believed Mrs. Menard was not injured and would not be filing an insurance claim against him (Docs. 66, 68). Consequently, they claim the

accident is covered by the policy, and they are entitled to judgment as a matter of law that State Auto does, in fact, have a duty to defend and indemnify Brumit in the underlying lawsuit (Docs. 66, 68).

*Applicable Legal Principles*

In deciding whether insurance coverage exists in a duty to defend action, a federal court sitting in diversity must apply state law of contract interpretation. *See Netherlands Ins. Co. v. Phusion Projects, Inc.*, 737 F.3d 1174, 1177 (7th Cir. 2013); *Nation Athletics Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008); *Allstate Ins. Co. v. Keca*, 368 F.3d 793, 796 (7th Cir. 2004). In this instance, the parties agree that Illinois law governs (*see* Docs. 67, 69, 70-1).

Illinois law provides that notice provisions "impose valid prerequisites to insurance coverage," and are "not a mere technical requirement that the insured is free to overlook or ignore with impunity." *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 856 N.E.2d 338, 343 (Ill. 2006) (citation omitted); *Montgomery Ward & Co. v. Home Ins. Co.*, 753 N.E.2d 999, 1004 (Ill. App. Ct. 2001). Thus, Illinois law provides that when an insured fails to comply with the notice provision, "the insurer may be relieved from its duty to defend and indemnify the insured under the policy." *Zurich Ins. Co. v. Walsh Const. Co. of Illinois*, 816 N.E.2d 801, 805 (Ill. App. Ct. 2004) (citations omitted); *Country Mut. Ins.*, 856 N.E.2d at 343 ("Breaching a policy's notice clause by failing to give reasonable notice will defeat the right of the insured party to recover under the policy.") (citation omitted).

When a notice provision requires "prompt" notice, like the provision in this case, Illinois courts have interpreted the policy to mean that notice must be given "within a

reasonable time."[3] Whether notice has been given within a reasonable time depends on the facts and circumstances of each case. *Country Mut. Ins.*, 856 N.E.2d at 343). Notably, under Illinois law, a lengthy delay in providing notice to insurer "is not an absolute bar to coverage provided that the insured has a justifiable excuse for the delay." *Commercial Underwriters Ins. Co. v. Aires Envtl. Servs., Ltd.*, 259 F.3d 792, 796 (7th Cir. 2001) (citation omitted). To determine if the excuse is justifiable and if notice was given within a reasonable time, Illinois courts consider the following factors: (1) the specific language of the policy's notice provision; (2) the insured's sophistication in commerce and insurance matters; (3) the insured's awareness of an occurrence as defined by the terms of the insurance policy that may trigger coverage; (4) once aware of the occurrence, the insured's diligence in ascertaining whether policy coverage is available; and (5) prejudice to the insurer. *W. Am. Ins. Co. v. Yorkville Nat. Bank*, 939 N.E.2d 288, 293–94

---

[3] *See Farmers Auto. Ins. Ass'n v. Burton*, 967 N.E.2d 329, 333–34 (Ill. App. Ct. 2012) (applying test of "whether notice has been given within a reasonable time" where policy required "prompt" notice of accident or loss); *First Chicago Ins. Co. v. Molda*, 948 N.E.2d 206, 217 (Ill. App. Ct. 2011) (same); *Am. Family Mut. Ins. Co. v. Blackburn*, 566 N.E.2d 889, 893 (Ill. App. Ct. 1991) (where policy required "prompt" notice of occurrence, court explained that "[p]rovisions in policies stating when the insurer must be notified of a covered occurrence have generally been interpreted to require notification of the company within a reasonable time, considering all the facts and circumstances of the particular case."). *See also W. Am. Ins. Co. v. Yorkville Nat. Bank*, 939 N.E.2d 288, 294 (Ill. 2010) ("The term 'immediate,' in the context of insurance policy notice provisions, has been interpreted in a similar manner to the phrase 'as soon as practicable.'"); *Country Mut. Ins.*, 856 N.E.2d at 343, 344 (explaining the *Simmon* analysis—that is, "examin[ing] the circumstances of the case . . . and determin[ing] whether the insurer in question received reasonable notice"—"has been widely accepted as the proper analysis for review of *all* notice requirements contained in insurance policies.") (emphasis added); *Employers Reinsurance Corp. v. E. Miller Ins. Agency, Inc.*, 773 N.E.2d 707, 717 (Ill. App. Ct. 2002) ("[A]n insurer's actual notice of a potential suit, within a reasonable time, is sufficient to satisfy the insured's duty to give prompt notice."); *Gen. Cas. Co. of Illinois v. Juhl*, 669 N.E.2d 1211, 1214 (Ill. App. Ct. 1996) ("[T]he insured was required to give notice 'promptly.' That would seem to require somewhat shorter notice than the words 'as soon as practicable' . . . but, nevertheless, the word 'promptly' as used here . . . does have an element of reasonableness associated with it."); 23 DAVID J. ROE , ET AL., ILLINOIS PRACTICE SERIES, Illinois Automobile Insurance Law § 5:14 ("Policies often call for 'immediate' or 'prompt' notice, or notice 'as soon as practicable.' Regardless of the exact language, the test adopted by the Illinois courts is whether the notice is reasonable under the particular facts and circumstances.").

(Ill. 2010) (citing *Country Mut. Ins.*, 856 N.E.2d 338); *Berglind v. Paintball Business Ass'n*, 930 N.E.2d 1036, 1046 (Ill. App. Ct. 2010).

Whether an insured's notice to its insurer was timely or untimely "generally is a question of fact for the trier of fact." *W. Am. Ins.*, 939 N.E.2d at 293 (citing *Northbrook Prop. & Cas. Ins. Co. v. Applied Sys., Inc.*, 729 N.E.2d 915, 921 (Ill. App. Ct. 2000)). It may be resolved as a matter of law, however, when the material facts are not in dispute. *E.g.*, *Cas. Indem. Exch. v. Vill. of Crete*, 731 F.2d 457, 458 (7th Cir. 1984); *Sentinel Ins. Co., Ltd. v. Cogan*, 202 F. Supp. 3d 831 (N.D. Ill. 2016); *Fairmount Park, Inc. v. Travelers Indem. Co.*, 982 F. Supp. 2d 864, 871 (S.D. Ill. 2013); *Berglind*, 930 N.E.2d at 1044 (citation omitted); *Montgomery Ward*, 753 N.E.2d at 1004; *Northbrook,* 729 N.E.2d at 921 (citation omitted).

Here, the parties have not stipulated to the facts, however, the material facts concerning the accident, the underlying lawsuit, and the insurance policy are essentially undisputed by the parties (*see* Doc. 81).[4]  Because there are no disputed issues of material fact, the Court can determine as a matter of law whether "prompt" notice was given to State Auto.

*Application of the Factors*

### 1.  The Language of the Policy

The Court first considers the language of Carl Brumit's insurance policy in determining the reasonableness of his late notice to State Auto.

---

[4] There are a couple of differences in how the parties present the facts. For example, State Auto says the "wooden tailgate" of Mr. Brumit's truck "struck" Mrs. Menard, while the other parties say she was "tapped" by the "wooden-framed sideboard" (Doc. 70-1, Doc. 81). These differences are minor, however, and do not bear on the outcome of the motions for summary judgment.

State Auto argues that the notice provision imposed a mandatory requirement on Carl Brumit to promptly notify them of any and all accidents (Doc. 70-1; *see also* Docs. 76, 78). According to State Auto, the "notice provision is couched in mandatory, not optional terms," and because there is no qualification or condition, "if accident, then notice" (Doc. 70-1, p. 14). In other words, State Auto claims the notice provision in Carl Brumit's policy required him to report any and all accidents, regardless of whether bodily injury or property damage occurred and regardless of whether he had reason to believe that a claim would not be filed. Carl Brumit and the Menards contend, however, that the policy did not require Brumit to provide notice of any and all accidents. Instead, it required him to provide notice of only those accidents involving "bodily injury" (Doc. 81, Doc. 95).

The primary objective of a court in construing the language of an insurance policy "is to ascertain and give effect to the intentions of the parties as expressed in the contract." *Netherlands Ins. Co. v. Phusion Projects, Inc.*, 737 F.3d 1174, 1177 (7th Cir. 2013). In doing so, the court must "assume that every provision was intended to serve a purpose," and therefore, the insurance policy must be "construed as a whole, giving effect to every provision, and taking into account the type of insurance provided, the nature of the risks involved, and the overall purpose of the contract." *Rich v. Principal Life Ins. Co.*, 875 N.E.2d 1082, 1090 (Ill. 2007) (citations omitted); *accord Clarendon Nat. Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011). If the language of the policy is unambiguous, the provision will be applied as written. *Netherlands Ins.*, 737 F.3d at 1177. If there is any ambiguity, however, the provision "will be construed liberally in favor of the insured."

*Id.* "The court will find an ambiguity where the policy language is susceptible to more than one reasonable interpretation, and not simply where the parties disagree as to the policy's meaning." *Id.* (internal quotation marks and citation omitted). *See also Clarendon Nat. Ins.*, 645 F.3d at 934 ("The fact that contractual language may, on occasion, pose difficult factual applications does not make that language ambiguous.").

The Court finds that State Auto's interpretation of the notice provision is simply untenable when the policy is read as a whole and the nature of auto insurance is considered. The notice provision reads:

> [State Auto] ha[s] no duty to provide coverage under this policy unless there has been full compliance with the following duties:
>
> In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss".

(Doc. 1-2, p. 7).

The word "coverage" in the first sentence is quite obviously linked to the "accident or loss" mentioned in the second sentence. Boiled down, these two sentences mean that State Auto will not provide coverage for an accident unless it was given prompt notice of that accident. In other words, the policy requires notice of accidents for which coverage may, or will, be sought.

This interpretation is supported by other provisions of the policy. Specifically, the liability coverage section provides that State Auto will pay for all sums Brumit legally must pay for "bodily injury" or "property damage" caused by an "accident" (Doc. 1-2, p. 2). And the definition section provides that "'accident' includes continuous or repeated exposure to the same condition *resulting in* 'bodily injury' or 'property

damage.'" (Doc. 1-2, p. 8) (emphasis added). Both of these provisions make clear that the policy is focused on accidents involving bodily injury and/or property damage. It would be incongruous if the policy then went on to require notice of *any and all* accidents, even those that don't involve a bodily injury or property damage.

It also doesn't make sense that an automobile insurer would want to know about each and every accident its insureds are involved in, no matter how trivial or unlikely the possibility that a claim will be filed. State Auto likely provides automobile insurance to thousands, perhaps tens of thousands, of individuals. It could not possibly intend for all of those insureds to provide notice of every incident involving their vehicles, including every scraped curb, every rammed grocery cart, every paint scratch, and every dinged door. State Auto's phones would never stop ringing, and it would be forced to expend considerable resources on accidents for which coverage is not available, which is obviously not a good business model.

Additionally, the Court believes the absence of qualifying language in the notice provision that explicitly grants discretion to the insured—for example, language requiring prompt notice of an accident if the accident "may result in a claim," "is likely to involve this policy," "is likely to result in liability under the policy," or something of the like—is inconsequential. In *Barrington Consolidated High School v. American Ins. Co.*, a high school had a liability insurance policy with a notice provision that provided, "In the event of an occurrence or accident, written notice shall be given by or on behalf of the insured to the Company or any of its authorized agents as soon as practicable." 319 N.E.2d 25, 27 (Ill. App. Ct. 1974). Even though the notice provision did not contain

any qualifying language, the Illinois Supreme Court essentially read an element of discretion into the provision. The Court explained:

> An insurance policy's requirement of giving notice obviously refers to an occurrence or accident covered by the policy . . . . It cannot be plausibly said that by the notice provision the insurer intended that every occurrence or accident had to be reported to it.

319 N.E.2d at 28.

The weight of authority holds that "the duty to notify the insurer of an occurrence arises at the point in time that it would appear 'to a reasonably prudent person that a claim potentially covered by the policy may be brought against the insured.'" *Commercial Underwriters Ins. Co. v. Aires Envtl. Servs., Ltd.*, 259 F.3d 792, 796 (7th Cir. 2001) (citing *Indus. Coatings Group, Inc. v. Amer. Motorists Ins. Co.*, 658 N.E.2d 1338, 1343 (Ill. App. Ct. 1995)). *See also Am. Country Ins. Co. v. Efficient Const. Corp.*, 587 N.E.2d 1073, 1076 (Ill. App. Ct. 1992) ("An insured is not required to report every injury it is aware of, it is only required to report those injuries which a reasonable person would understand is likely to lead to a claim"); *Barrington*, 319 N.E.2d at 28 ("[N]otification was not intended to be furnished . . . if under the circumstances of the occurrence or accident there was no ground for the insured as a reasonable person to believe that a claim under the policy would be made."). *See generally* 13 STEVEN PITT, ET AL. COUCH ON INSURANCE, § 192:88 (3d ed.) ("A delay in giving notice of accident under an automobile liability policy is excusable when the accident is trivial, results in no apparent harm, and furnishes no reasonable ground for the insured to believe that a claim might arise, notwithstanding that it may later prove to be a serious injury."); 16 WILLISTON ON CONTRACTS § 49:88 (4th

ed.) ("The duty to give notice arises when, under the circumstances, the insured has reason to know of the possibility of an impending claim, regardless of whether the insured believes that he or she is liable, or that the claim is valid.")

For these reasons, the Court concludes that, as a matter of law, Carl Brumit's insurance policy did not require notice of all accidents. It required notice of accidents that resulted in bodily injury and property damage, and therefore, were reasonably likely to give rise to a claim. In light of this conclusion, this factor does not weigh in favor of State Auto's contention that Carl Brumit's late notice was unreasonable.

## 2.   The Sophistication of the Insured

The Court next evaluates Carl Brumit's sophistication with respect to insurance matters. State Auto argues that Brumit qualifies as a sophisticated insured (Doc. 70-1), while Brumit and the Menards both contend that he does not. (Doc. 67, Doc. 69).

"The standard used in determining an insured's sophistication is based on his experience not only in the world of commerce but also insurance." *Berglind v. Paintball Business Ass'n*, 930 N.E.2d 1036, 1046 (Ill. App. Ct. 2010) (quoting *Brotherhood Mut. Ins. Co. v. Roseth,* 532 N.E.2d 354 (Ill. App. Ct. 1988)). Courts generally consider the insured's level of education and occupation, the insured's prior experience in handling insurance claims, and whether the insured was represented by an attorney or had other assistance with insurance matters. *See, e.g., Berglind*, 930 N.E.2d at 1045–46. *See also Sentinel Ins. Co., Ltd. v. Cogan*, 202 F. Supp. 3d 831, 839 (N.D. Ill. 2016) (explaining that lawyers, who are "in the business of studying contracts and case law . . . are routinely found to be sophisticated in commercial and insurance matters simply by virtue of their

profession.”); *W. Am. Ins. Co. v. Yorkville Nat. Bank*, 939 N.E.2d 288, 294 (Ill. 2010) (holding that banks are “presumed to be sophisticated in the areas of commerce and insurance.”); *Equity General Ins. Co. v. Patis,* 456 N.E.2d 348, 352 (Ill. App. Ct. 1983) (“experienced insurance agent” considered sophisticated insured); *Westfield Ins. Co. v. Pugh*, 127 F. Supp. 3d 913, 917 (N.D. Ill. 2015) (“Representation by counsel has been recognized as evidence of sophistication.”).

Here, Carl Brumit is a high school graduate with two years of community college education in electrical work (Doc. 70-2). For the past four years, he has run his own concrete construction business out of his home (*Id.*). Prior to that, he worked at a lumber company for eight years, as a cook for a couple years, and as a concrete construction worker (*Id.*). Brumit has homeowners’ insurance, however, his wife takes care of paying the premiums and renewing the policy (*Id.*). His wife has a personal auto insurance policy, but Brumit does not because he drives a truck owned by his business and insured through a business auto policy (*Id.*). Brumit also has worker’s compensation insurance and general liability insurance for his business (*Id.*).

Although Brumit has various insurance policies, he has never filed a claim under any of them (Doc. 70-2). Brumit also has a relatively accident-free driving record; he’s only been in one accident aside from the incident with Delores Menard. That accident occurred when he was 19-years-old and he wrecked his father’s truck by driving it into a ditch (*Id.*). He was not injured (*Id.*). At the time, he was still living at home and his parents, not Carl, filed the insurance claim to get the truck replaced (*Id.*).

Following the incident with Mrs. Menard, Brumit did not review his business

auto policy (Doc. 70-2). In fact, he has never read the entire policy (*Id.*). Brumit did not contact an attorney or anyone trained or otherwise involved in the insurance industry (*Id.*).

In sum, Carl Brumit is a blue collar worker with limited education. There is no evidence that he has ever studied or taken any courses in insurance or had any job training pertaining to insurance matters. Brumit also lacks general experience with insurance matters; in fact, his only experience appears to be simply procuring policies from insurance agents. There is also no evidence that Brumit had outside counsel or other assistance with his insurance matters that would supplement his personal lack of insurance experience.

Based on the undisputed evidence, and considering the illustrative case law, the Court finds that, as a matter of law, Brumit did not qualify as a sophisticated insured. He instead falls somewhere on the unsophisticated end of the spectrum. *Compare Berglind*, 930 N.E.2d at 1045–46 (finding owner of paintball facility was unsophisticated insured when he was a high-school dropout with no education in insurance matters, his only experience with insurance was purchasing one policy for his business, and he did not have outside counsel or other assistance with his insurance matters); *Grasso v. Mid-Century Ins. Co.*, 536 N.E.2d 977, 980 (Ill. App. Ct. 1989) (finding individual inexperienced in insurance matters when she had never been in an auto accident before and had no dealings with insurance agencies other than receiving cancellation and premium notices); *Long v. Great Central Insurance Co.*, 546 N.E.2d 739 (Ill. App. Ct. 1989) (lacking other evidence in the record, dramshop owner considered "unschooled

layman" in insurance matters), *with River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1171 (7th Cir. 1998) (finding former surgeon was a sophisticated insured when he contracted with a number of insurance companies and held a number of different disability policies, and he sought professional assistance from his attorney in giving notice to his disability insurers of his "injury" claim); *Sentinel Ins. Co.*, 202 F. Supp. 3d at 839 (finding insureds, who were lawyers and who had retained litigation counsel to defend the underlying suit, were sophisticated in insurance matters); *MHM Servs. Inc. v. Assurance Co. of Am.*, 975 N.E.2d 1139, 1159 (Ill. App. Ct. 2015) (finding corporation was sophisticated insured where it had both primary and excess/umbrella coverage, general counsel, local litigation counsel, coverage counsel, and had enough cash to pay litigation and settlement expenses).

In light of the Court's conclusion, this factor weighs against State Auto, and in favor of Brumit and the Menards, in the determination of whether the late notice was reasonable.

### 3. The Insured's Awareness of an Occurrence

The third factor the Court must consider is Carl Brumit's awareness of an occurrence that may trigger insurance coverage.

State Auto argues that any reasonably prudent person would assume that coverage under an auto policy may be triggered when an elderly pedestrian is struck with a vehicle and treated for injuries by emergency medical personnel (Doc. 70-1). That may be true as a general matter, but the Court's analysis of this factor must focus on the specific facts and circumstances of this case, not broad general propositions. *See, e.g.,*

*Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 856 N.E.2d 338, 343 (Ill. 2006) ("Whether notice has been given within a reasonable time depends on the facts and circumstances of each case.")

In this instance, the accident occurred when Carl Brumit was backing out of a parking space, meaning this was a very low speed accident. And the impact with Mrs. Menard was slight, so slight that she characterized it as a "tap"—and Brumit didn't even know it happened. But the impact was enough that it caused Mrs. Menard to fall on the ground. The only injuries she appeared to have suffered, however, were a scraped knee and a scraped elbow. Mrs. Menard indicated that that she did not need an ambulance and was not hurt. An ambulance came anyway, but Mrs. Menard declined to have the paramedics transport her to a hospital because she did not think she was seriously hurt. Mrs. Menard walked herself to her car and drove herself home.

Based on Mrs. Menard's statements and behavior at the scene, Carl Brumit thought her injuries were minor. And Carl Brumit was not given a ticket. In fact, he was not given any paperwork by Officer Paul, not even Mrs. Menard's contact information. According to Brumit, he did not report the accident to State Auto immediately after it occurred because he "was under the impression that [Mrs. Menard] was not injured," much less "injured in a way that she would have to file a claim or pursue a lawsuit" (Doc. 70-2). Brumit stated that if he had been told at the scene that she was injured, or if he was later notified that she was hospitalized, that he would have notified State Auto (*Id.*)

Officer Jerry Paul and paramedic Darin Hartman also apparently seemed to think that Delores Menard's injuries were minor. In particular, Officer Paul indicated on his report that Mrs. Menard's injuries were "non-incapacitating," and he testified that this was a "lower level, standard-type [incident] . . . [and it] wasn't anything where I felt I would need to go to court to testify for" (Doc. 70-5). And Hartman testified that Mrs. Menard told him she was okay, which he apparently agreed with because he did not override her refusal to go by ambulance to the hospital (Doc. 70-5).

In sum, the incident was low-speed, low-impact; Mrs. Menard's only visible injuries were scrapes; Mrs. Menard said she was okay and refused to be taken by ambulance to the hospital; and Carl Brumit was not ticketed. Based on this undisputed evidence, the Court concludes the incident was trivial, resulted in no apparent harm, and furnished no reasonable ground for Brumit to believe that a claim might arise, particularly given his lack of sophistication in insurance matters. *See Berglind v. Paintball Business Ass'n*, 390 N.E.2d 1036 (Ill. App. Ct. 2010) (accident occurred when eleven-year-old child was struck in the eye with a paintball, and his eye was rinsed out by off-duty physician who happened to be at the paintball facility before an ambulance arrived to take the child to the hospital; court found that facility owner's belief that no claim would be filed was reasonable because "in his unsophisticated mind, he thought the [child] had no injury after his eye was washed out" as the child "was sitting calmly" and "everything looked great."); *Nat'l Bank of Bloomington v. Winstead Excavating of Bloomington*, 419 N.E.2d 522, 524 (Ill. App. Ct. 1981) (accident occurred when excavation company's driver pulled onto the highway and truck that was rapidly approaching him

from behind flipped over in the median as it tried to pass him; court held that company had no reason to believe the other driver would bring a claim against the company's insurance when the vehicles made no contact and company's driver was not issued a traffic citation). *Cf. Johnson v. Universal Underwriters, Inc.*, 283 F.2d 316, 319 (7th Cir. 1960) (affirming that insured's belief that notice was not necessary was unreasonable because, even though police officer said the accident was not serious, the insured knew that a man was struck by his car and knocked onto the street, the man refused to get up, and then was taken to a hospital by a police car).

In light of the Court's conclusion, this factor weighs against State Auto, and in favor of Brumit and the Menards, in the determination of whether the late notice was reasonable.

### 4.   The Insured's Diligence in Ascertaining Whether Coverage is Available

The fourth factor the Court must consider is Carl Brumit's diligence in ascertaining whether coverage was available.

After the incident occurred, Carl Brumit did not think that coverage was an issue because he did not think that Delores Menard was injured or possibly going to file a claim against his insurance. Given Brumit's lack of sophistication in insurance matters and his erroneous, yet reasonable, belief that the incident would not give rise to a claim, it was likewise completely reasonable for him not to take any action to determine whether coverage under his insurance policy was available for the incident.

Brumit only realized that Mrs. Menard suffered an injury from the accident and intended to file a claim against his insurance when he received a copy of her lawsuit and

the lien letter from her attorney. He passed the papers onto his insurance agent the very next day. There is very little he could have done to be *more* diligent.

Accordingly, the Court finds that this factor weighs against State Auto, and in favor of Brumit and the Menards, in the determination of whether the late notice was reasonable.

### 5. Prejudice to the Insurer

Lastly, the Court considers prejudice to State Auto resulting from the twenty-one month delay in receiving notice of the accident. The notice provision in an automobile insurance policy gives the insurance company an opportunity to investigate the accident, gather and preserve possible evidence, and defend claims against its insureds. *Commercial Underwriters Ins. Co. v. Aires Envtl. Servs., Ltd.*, 259 F.3d 792, 796 (7th Cir. 2001) (citation omitted); *Barrington Consol. High Sch. v. Am. Ins. Co.*, 319 N.E.2d 25, 27 (Ill. 1974).

State Auto claims that, as a result of Carl Brumit's delay in providing notice of the accident, it was prejudiced in two ways. First, it was denied the opportunity to perform a timely investigation of the accident (Doc. 70-1). Second, it was denied the opportunity to attempt to settle Delores Menard's claim for a lesser amount before she filed her lawsuit (Doc. 70-1).

With respect to the investigation, State Auto did not cite to any controlling authority indicating that a lost opportunity immediately following an accident is sufficient in and of itself to establish prejudice (*see* Docs. 70-1, 96). *But see Cincinnati Ins. Co. v. Estate of Chee*, 826 F.3d 433, 435 (7th Cir. 2016) (holding insurance company did not establish prejudice from late notice when it merely "assert[ed] the delay in receiving

notice could have been prejudicial (evidence might have been lost) but [did] not identify any concrete prejudice."). State Auto also did not identify any actual prejudice by pointing to specific evidence or witnesses that are no longer available due to the late notice (*see* Docs. 70-1, 96). *Cf. Cincinnati Ins. Co. v. D & D Trucking & Delivery*, No. 04-2244, 2006 WL 521742, at *4 (C.D. Ill. Mar. 2, 2006) (holding insurer was prejudiced by late notice because (1) it lost opportunity to gather information on critical issues when, in the months following the accident, insured suffered a stroke and could no longer speak and business records were destroyed in a flood, and (2) it lost opportunity to participate in insured's defense when, by the time it received notice of lawsuit, written discovery and depositions had been completed and dispositive motions had been filed).

Instead of pointing to concrete prejudice, State Auto asserts that "it is entirely speculative as to the extent [it] is hampered in its investigation . . . following his 21-month delay in reporting the accident" (Doc. 70-1). State Auto further asserts that "it is unclear" whether unidentified witnesses could have provided testimony in support of Carl or whether any physical evidence is now missing or has been altered (Doc. 70-1). These uncertainties, according to State Auto, demonstrate that it was prejudiced by Brumit's late notice (Doc. 76).

The Court disagrees. "Summary judgment is the put up or shut up moment in a lawsuit." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citation omitted). Speculating as to what may be missing or unavailable is simply insufficient at this point in the litigation to show that State Auto suffered any prejudice. See *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 841 (7th Cir. 2014) ("Speculation is no substitute for evidence at

the summary judgment stage."). State Auto should have looked into those questions by now and come with a firm answer as to whether witnesses were unavailable or evidence was missing.

As for the opportunity to settle Delores Menard's claim, State Auto admits that it is unclear whether early settlement was a realistic option (Doc. 76, p. 17). Additionally, Delores Menard submitted an affidavit in which she asserted that if State Auto had contacted her soon after the incident, she would not have been willing to discuss settlement until she was checked out by her doctors (Doc. 67-11, pp. 4–6). She explained that, four days after the incident, she went to see her orthopedist who performed her previous knee replacement surgery because she wanted to ensure there was no injury to her knee beyond the visible scrape (*Id.*). She also went to see her family doctor (*Id.*). She further explained that in 2006 she was diagnosed with degenerative disc disease in her lumbar spine, which caused occasional low back pain; within a couple of days after the incident, however, her back pain progressively worsened (*Id.*). An MRI revealed curvatures in her spine and disc disease at all levels from her mid-thoracic spine through her lumbar spine (*Id.*). She began receiving ongoing treatment for her back pain that culminated in spinal surgery in April 2015 (*Id.*). Mrs. Menard concluded by stating that she "would not have been willing to discuss settlement of my claim until all my ailments and conditions that developed starting a couple of days after the accident had been resolved and my doctors had released me" (*Id.*).[5]

---

[5] State Auto objects to Delores Menard's affidavit, arguing that it is "self-serving, conclusory, and unsupported" (Doc. 76, p. 15). State Auto also suggests that Mrs. Menard's affidavit is speculative and not

Based on the above, there is no legal or evidentiary basis on which the Court could conclude as a matter of law that State Auto suffered prejudice as a result of the delay in notification. Consequently, this factor weighs against State Auto, and in favor of Brumit and the Menards, in the determination of whether the late notice was reasonable.

### 6.  Conclusion

In conclusion, after considering all of the relevant factors, the Court finds that under the circumstances of the present case, the twenty-one month delay in giving notice of the September 2013 incident to State Auto was reasonable as a matter of law. Consequently, Brumit is entitled to coverage under the policy for the September 2013 incident, and State Auto has a duty to defend and Brumit and Brumit Services in the underlying lawsuit. In light of this conclusion, the Court further finds that State Auto is not entitled to reimbursement of the costs it has incurred in defending Brumit and Brumit Services in the underlying lawsuit.

C<small>ONCLUSION</small>

The motion for summary judgment filed by Plaintiff State Auto Property and Casualty Insurance Company (Doc. 70) is **DENIED**. The motions for summary judgment filed by Defendants Delores and Allen Menard (Doc. 66) and Defendants Carl Brumit and Brumit Services, Inc. (Doc. 68) are **GRANTED**.

---

based on personal knowledge (*Id.*). These arguments are meritless. Of course, Mrs. Menard's affidavit is self-serving—that is the nature of affidavits. *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013); *Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003). Additionally, Mrs. Menard's affidavit is clearly based on personal knowledge, and it is not conclusory, unsupported, or speculative—she provided a fairly thorough explanation as to why she would not have been willing to discuss settlement, and that explanation is supported by specific facts from her medical history and her first-hand experience. Therefore, the affidavit is admissible.

The Clerk of Court shall enter judgment in favor of Brumit Services, Inc., Carl E. Brumit, Jr., Delores M. Menard, and Allen W. Menard and against State Auto Property and Casualty Insurance Company.

**IT IS SO ORDERED.**

**DATED:   March 28, 2017**

**s/ Nancy J. Rosenstengel**
**NANCY J. ROSENSTENGEL**
**United States District Judge**